**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 22-21786-CIV-SCOLA/GOODMAN**

RALPH J. HYPPOLITE, II,
Petitioner,

v.

HONORABLE FRANK KENDALL,
Secretary of the Air Force, et al.
Respondents,

_____/

**REPORT AND RECOMMENDATIONS ON**
**PETITIONER'S REQUEST FOR A WRIT OF HABEAS CORPUS**

Petitioner, Ralph J. Hyppolite II ("Petitioner" or "Hyppolite"), moves this Court for a Writ of Habeas Corpus, Writ of Mandamus, and Declaratory Judgment challenging his general court-martial conviction and sentence from the Kadena Air Base in Japan ("Petition"). [ECF No. 26]. Hyppolite argues that the general court-martial conviction and sentence imposed by the convening authority should be vacated in its entirety through habeas corpus because: (1) the military judge abused his discretion in admitting allegedly impermissible propensity evidence and (2) the evidence is legally and factually insufficient to support the finding of guilt for sexual assault in Specification 5 of the charge. *Id.*

Hyppolite's Amended Petition[1] asks this Court to direct the Secretary of Defense and the Secretary of the Air Force to reinstate him to active duty and to restore all pay, rank, benefits, entitlements, and privileges, among other relief. *Id.* The Government (i.e., specifically: Frank Kendall, Secretary of the Air Force; Lloyd J. Austin, III, Secretary of Defense; the Department of the Air Force; the Department of Defense; and the United States of America) filed a response in opposition. [ECF No. 34]. Hyppolite did not file a reply. Senior United States District Judge Robert N. Scola Jr. referred all pretrial proceedings to the Undersigned for a Report and Recommendations. [ECF No. 19].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny (without prejudice)** Hyppolite's Amended Petition for habeas corpus. In addition, the Undersigned **respectfully recommends** that the District Court permit him to add a new Respondent as a party and to then transfer the case to the District of Maryland. Finally, the Undersigned **respectfully recommends** that the Court **not** issue a certificate of appealability.

## I.      Factual and Procedural Background

This case involves conduct that occurred between Airman Basic Ralph J. Hyppolite II, a former Air Force Staff Sergeant in the United States Air Force, other Air Force members and civilians. The facts surrounding the charges against Hyppolite were summarized by the United States Air Force Court of Criminal Appeals on direct appeal:

---

[1]      The Undersigned will use the term "Petition" to refer to the Amended Petition.

The five charged offenses span a two-year period when Appellant and the alleged victims were assigned to the same unit at Seymour Johnson Air Force Base, North Carolina. The allegations involve three Airmen and a former Airman, SSgt RW, SSgt SAK, Mr. STK, and SrA JD, who all testified at Appellant's court-martial. In Specifications 1–3, Appellant was alleged to have committed abusive sexual contact by touching the genitalia of SSgt RW, SSgt SAK, and Mr. STK, respectively, either directly or through their clothing, while each was asleep, with an intent to gratify Appellant's sexual desire. In Specification 4, Appellant was alleged to have committed abusive sexual contact by causing bodily harm by touching SrA JD's genitalia with an intent to gratify Appellant's sexual desire. In Specification 5, Appellant was alleged to have sexually assaulted SrA JD by penetrating his mouth and anus with Appellant's penis.

*United States v. Hyppolite*, No. ACM 39358, 2018 WL 5516681, at *1 (A.F. Ct. Crim. App. Oct. 25, 2018).

On June 8, 2017, a general court-martial at the Kadena Air Base in Japan found Hyppolite guilty of three specifications of abusive sexual contact, and one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. *Id.* at *1-2. The military judge sentenced Hyppolite to dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and grade reduction from E-5 to E-1. *Id.*

Petitioner appealed that decision to the Air Force Court of Criminal Appeals. ("CCA"). The CCA set aside the finding of guilt for Specification 1 and dismissed it with prejudice. *Id.* at *16. The CCA then reduced Hyppolite's confinement to six years. *Id.*

The CCA also reviewed the military judge's denial of Hyppolite's motion to sever. The CCA noted that the military judge "determined that evidence admitted to prove

Specifications 1-3 was probative as to Specifications 4 and vice versa. The military judge

applied the three-pronged test articulated in *United States v. Reynolds*, 29 M.J 105 (C. M. A.

1989)[2], to find that Mil. R. Evid. 404(b) allowed the evidence of one charged offense to be

used to prove another." *Id.* at *6.

_____

[2]      In *Reynolds*, the U.S. Court of Military Appeals discussed Military Rule of Evidence
404(b), which governs the admissibility of uncharged misconduct, and determined that this
type of evidence is admissible when it has "some independent relevance under Mil. R. Evid.
401 and 402." 29 M.J at 109 (citing *United States v. Ferguson*, 28 MJ 104, 108 (C. M. A. 1989)).

> The rule can best be summed up by stating that it is abundantly clear that
> evidence which is offered simply to prove that an accused is a bad person is
> not admissible. To be admissible, the evidence must have some independent
> relevance under Mil. R. Evid. 401 and 402. *United States v. Ferguson, supra* at
> 108. It must "make the existence of any fact that is of consequence to the
> determination of the action more probable or less probable than it would be
> without the evidence." Mil. R. Evid. 401. And, of course, "its probative value"
> must not be "substantially outweighed by the danger of unfair prejudice." Mil.
> R. Evid. 403.

> Therefore, when we look to evidence of uncharged misconduct, we are testing
> its admissibility under at least three standards:

> 1. Does the evidence reasonably support a finding by the court members that
> appellant committed prior crimes, wrongs or acts? *United States v. Mirandes–
> Gonzalez*, 26 MJ 411 (C. M. A. 1988).

> 2. What "fact . . . of consequence" is made "more" or "less probable" by the
> existence of this evidence? Mil. R. Evid. 401; *United States v. Ferguson, supra* at
> 108.

> 3. Is the "probative value . . . substantially outweighed by the danger of unfair
> prejudice"? Mil. R. Evid. 403; *Saltzburg, supra* at 362.

The CCA found that "the military judge erred in concluding that evidence of sexual contact supporting Specifications 2 and 3 made more probable a fact of consequence for Specifications 4 and 5 and vice versa." *Id.* at *7. The CCA concluded that the military judge failed to properly apply the second *Reynolds* prong, and that admitting "evidence of each of the five specifications as a plan or scheme common to all five specifications was clearly unreasonable and therefore constituted a clear abuse of discretion." *Id.* at *8. Finding that the military judge's error was harmless, the CCA nevertheless affirmed the remainder of Hyppolite's convictions. *Id.* at *12-13; *16.

Hyppolite then appealed to the United States Court of Appeals for the Armed Forces ("CAAF"). The CAAF affirmed the judgment of the CCA but held that the military judge at Hyppolite's court martial did *not* abuse his discretion regarding the Mil. R. Evid. 404(b) ruling. *United States v. Hyppolite*, 79 M.J. 161, 162 (C. A. A. F. 2019).

On September 23, 2020, the Air Force notified Hyppolite that because he did not seek further review of his conviction in the United States Supreme Court, his conviction was now final under Article 76 Uniform Code of Military Justice. [ECF No. 34, p. 18]. The following year, Hyppolite requested extraordinary relief through a writ of habeas corpus petition, 28

---

*See United States v. Hicks*, 24 MJ 3, 7 (C. M. A.), *cert. denied*, 484 U.S. 827, 108 S. Ct. 95, 98 L. Ed. 2d 55 (1987). If the evidence fails to meet any one of these three standards, it is inadmissible.

*Id.*

5

U.S.C. § 1651(a) in the CCA. The CCA denied Hyppolite's petition on March 29, 2021 for lack of jurisdiction. *In re Hyppolite*, No. MC 2021-02, 2021 WL 1172145, at *1 (A.F. Ct. Crim. App. Mar. 29, 2021).

On July 9, 2021, the Air Force Clemency and Parole Board ("AFCPB") notified Hyppolite that he had been granted parole. [ECF No. 26, p. 3]. On August 20, 2021, Hyppolite was released from confinement at the Naval Consolidated Brig-Miramar, San Diego, California. *Id.* at 4. Hyppolite now resides in the Southern District of Florida, where he reports to the U.S. Probation Office. *Id.* Petitioner is required to register as a sex offender and report to Florida authorities pursuant to Fla. Stat. §§ 943.0435 and 775.21. *Id.* at 5.

Hyppolite filed his original petition for a Writ of Habeas Corpus on June 9, 2022. [ECF No. 1]. He later amended it that same year. [ECF No. 26]. Hyppolite's sentence expired on June 7, 2023. [ECF No. 26, p. 5].[3]

Hyppolite argues that he did not receive "full and fair" consideration of his claims. He contends that the military courts ignored even the concept of "rudimentary fairness." Hyppolite asserts that his Fifth Amendment Due Process Rights have been violated.

---

[3]     Hyppolite's sentence expired during the pendency of his motion, but he must still adhere to Florida's sex-offender reporting requirements. The Eleventh Circuit recently ruled that "Florida's lifetime registration and reporting requirements did not place [petitioner] 'in custody'" for purposes of habeas. *Clements v. Fla.*, 59 F.4th 1204, 1217 (11th Cir. 2023). Even if Hyppolite may now only be subject to various requirements for sex-offenders under Florida law, this case differs from *Clements* as the petitioner in *Clements* filed his habeas petition years after his probationary sentence expired in June of 2013. *Id.* at 1207. Here, Hyppolite was on parole for his original sentence when he filed his habeas petition.

Respondents argue that the named Respondents should be dismissed, that the declaratory judgment should be dismissed, that mandamus is generally unavailable in habeas petitions, and that the military courts fully and fairly considered the issues raised in this case.

## II.     Legal Standard and Analysis

The federal district courts have jurisdiction to consider habeas corpus petitions from the military criminal system. *See Burns v. Wilson*, 346 U.S. 137, 139-142 (1953). "[I]t is the limited function of the district court to determine whether the military court has given fair consideration to the petitioner's claims." *Chapman v. Warden, FCC Coleman - USP II*, No. 20-10427, 2021 WL 5863402, at *2 (11th Cir. Dec. 10, 2021), *cert. denied,* 142 S. Ct. 1696, 212 L. Ed. 2d 593 (2022) (*citing Burns*, 346 U.S. at 144). The Fifth Circuit, in *Calley v. Callaway*, held that the District Court must make four principal inquiries when reviewing military convictions of a habeas petition: (1) the asserted error must be of substantial constitutional dimension; (2) the issue must be one of law rather than of disputed fact already determined by the military tribunals; (3) military considerations may warrant different treatment of constitutional claims; and (4) the military courts must give adequate consideration to the issues involved and apply proper legal standards. 519 F.2d 184, 199-203 (5th Cir. 1975).[4]

---

[4]     "We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981. . . . shall be binding as precedent in the Eleventh Circuit. . . . " *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1207 (11th Cir. 1981).

Habeas jurisdiction requires that the petitioner be "in custody" and "custody" is determined from a petitioner's custody status when a habeas petition is filed. *See Patel v. U.S. Atty. Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003) ("'Custody' is determined at the time of the filing of the petition."). When Hyppolite filed his petition, he was on parole. His parole sentence expired after he filed his petition. But, even though his sentence is now expired, he is still eligible for habeas relief because he was on parole when he **filed** his petition. *Id.*; *see Brown v. Kendall*, No. CV DLB-22-410, 2023 WL 2648781, at *3 (D. Md. Mar. 27, 2023) ("When Brown filed his petition on January 18, he was on parole and under the immediate custody of the [AFCPB]. Although Brown's parole ended three days later on January 21, jurisdiction is determined at the time of filing."). *See also Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application."); *Chong v. District Director, I.N.S.*, 264 F.3d 378, 382 (3d Cir. 2001); *Plymail v. Mirandy*, 8 F.4th 308, 314 (4th Cir. 2021), *as amended* (Sept. 7, 2021).

When determining jurisdiction over a habeas petition, this Court must answer two related questions: (1) who is the proper respondent to the petition and (2) does the Court have jurisdiction over them. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Habeas straightforwardly provides that the proper respondent to a habeas petition is the person who has **custody** over the petitioner. *Id. See also* 28 U.S.C §§ 2242, 2243. As noted, "[c]ustody

is determined at the time of the filing of the petition." *Patel*, 334 F.3d at 1263 (internal citations omitted).

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. The *Padilla* Court recognized that there are exceptions to this rule. *Id.*

"A habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Padilla*, 542 U.S. at 438. (internal citations omitted). "Identification of the party exercising legal control over the detainee only comes into play when there is no immediate physical custodian." *Ex parte Endo,* 323 U.S. 283, 304-305, 65 S. Ct. 208, 89 L. Ed. 243. (1944). "In a scenario involving parole or supervised release, in which there is no warden imposing physical restraint, a petitioner may substitute whatever parole board or other governing body is responsible for setting the conditions of supervised release and enforcing them if the petitioner violates those conditions." *Miller v. Sangiacomo*, No. 10-CV-169A, 2010 WL 3749065, at *3 (W.D.N.Y. Sept. 20, 2010) (citing *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S. Ct. 373, 9 L. Ed.2d 285 (1963)).

Here, the AFCPB granted Hyppolite parole and subsequently released him from the Naval Consolidated Brig-Miramar. [ECF No. 26, p. 3]. His parole required him to comply

with the U.S. Probation Office-approved release plan. *Id.* Hyppolite claims that if he were to violate the conditions of his parole, then Respondent Ruiz, the Chief Probation Officer for the Southern District of Florida, would report his violations to the AFCPB. *Id.* at 4. Respondents argue that they should be dismissed because they are not the proper respondents under *Padilla*. [ECF No. 34, pp. 29-30]. The Undersigned agrees.

This case presents a unique factual scenario. Hyppolite challenges his military court martial convictions while on parole. He was convicted in Japan, imprisoned in California, and now presently resides in Florida. His sentence expired after he filed his petition; and even though his sentence expired, he is still obligated to comply and report to the relevant authorities under the Florida requirements for sex offenders. Similar situations have arisen outside of this Circuit. "Under the established federal legal system the decisions of one circuit are not binding on other circuits." *Bonner*, 661 F.2d at 1209. However, while not binding, those decisions may still be persuasive. *See United States v. Rosenthal*, 763 F.2d 1291, 1294 n.4 (11th Cir. 1985) ("[A]ny decision of another circuit, published or unpublished, is only of persuasive value.").

In *Miller v. Sangiacomo*, the petitioner challenged his Air Force court martial on the grounds of ineffective assistance of counsel. 2010 WL 3749065, at *1. Miller named the Chief U.S. Probation Officer for the Western District of New York and the AFCPB as respondents. He filed his petition with the district court after being released on parole. *Id.* at *1-2. The court noted that it must first identify the petitioner's proper custodian. *Id.* at *3. The court

10

found the AFCPB to be the only proper custodian because it "is the governing body currently managing petitioner's liberty. [AFCPB] placed petitioner into [mandatory supervised release]. [AFCPB] presented petitioner with the mandatory conditions of supervised release that he refused to acknowledge. The United States Probation Office in this District, at most, can relay updated information about petitioner to [AFCPB] and can ask [AFCPB] to modify or to terminate supervision." *Id.*[5] The court, considering the Supreme Court's decision in *Jones v. Cunningham*, 371 U.S. at 243,[6] noted that the local probation office had no power to modify or to terminate the petitioner's mandatory supervised release, even if ordered to do so by the court. *Id.* at *3.

The *Miller* Court dismissed the Chief Probation Officer and transferred the case, pursuant to 28 U.S.C. § 1631, to the District of Maryland, where the AFCPB is located. *Id.* at *5. *See Miller v. Air Force Clemency & Parole Bd.*, No. CIV.A. JFM-10-2621, 2011 WL 4402497, at *1 n.1 (D. Md. Sept. 20, 2011), *aff'd*, 472 F. App'x 210 (4th Cir. 2012) ("Miller filed this

---

[5]    Mandatory supervised release is a form of parole, and persons on it are treated as if they are on parole. *See Huschak v. Gray*, 642 F. Supp. 2d 1268, 1276-81 (D. Kan. 2009). *See also United States v. Streete*, No. 2010-04, 2010 WL 2308878, at *2 (A.F. Ct. Crim. App. Apr. 26, 2010).

[6]    In *Jones* the Supreme Court found that, while on release as part of a parole program, the petitioner was subject to conditions which "significantly confine[d] and restrain[ed] his freedom." *Id*. The conditions included: reporting to his probation officer, allowing the officer to visit his home or job at any time, keeping good company, keeping good work hours, working regularly, and living a clean lifestyle. *Id*. The court found that this was "enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute." *Id*.

petition in the Western District of New York which transferred the case to the District of Maryland after determining that the [AFCPB], located at Andrews Air Force Base in Maryland, was Miller's proper custodian.").

The Northern District of Illinois considered a similar case in *Knighten v. United States Parole Comm'n*, No. 13 C 7114, 2014 WL 4627813 (N.D. Ill. Sept. 16, 2014). In *Knighten*, the petitioner sought to challenge his Navy General court-martial through habeas relief. *Id.* at *1. Like Hyppolite and Miller, Knighten was on parole when he sought habeas relief. *Id.* The *Knighten* Court considered the jurisdictional question of whether the United States Parole Commission (with a supervisory office in the court's jurisdiction) or the Naval Clemency and Parole Board (no supervisory office in the court's jurisdiction) was the proper custodian. *Id.* at *2. The *Knighten* Court held that "when a petitioner is on parole, however, his custodian is the parole board, which has the authority to impose conditions on his release. Thus, the geographical location of the parole board determines which judicial district has jurisdiction of a given parolee's habeas petition." *Id.* (*citing Jones*, 371 U.S. at 243).

The *Knighten* Court, relying on *Sangiacomo*, 2010 WL 3749065, found that the Naval Clemency and Parole Board had control over the petitioner's parole, while the United States Parole Commission oversaw the parole in only a supervisory capacity. *Id.* Finding that the only district court with jurisdiction was the District Court for the District of Columbia, the *Knighten* court ordered the clerk to transfer the case to the District Court for the District of

Columbia pursuant to 28 U.S.C. § 1631. *Id.* at *3. *See Knighten v. United States Parole Comm'n*, 105 F. Supp. 3d 30 (D.D.C. 2015).

After Knighten's case was transferred, the District Court for the District of Columbia discussed the role of the Naval Clemency and Parole Board. The *Knighten* Court looked to Department of Defense Instruction 1325.07, *Administration of Military Correctional Facilities and Clemency Parole Authority* (March 11, 2013), and note[d] that "each Military Department establishes a Clemency and Parole Board 'to serve as the primary authority for administration of clemency [and] parole . . . policy and programs,' and with exceptions not irrelevant to this case, 'shall have approval authority for all clemency [and] parole . . . actions[.]" *United States Parole Comm'n*, 105 F. Supp. 3d at 34.[7] That court held that the Naval Clemency and Parole Board was the only entity with the authority to terminate parole. *Id.*

---

[7]    In his petition, Hyppolite cites to this same Department of Defense Instruction [ECF No. 26, p. 4]. Hyppolite argues that:

> On July 9, 2021, the [AFCPB] notified Petitioner-Plaintiff that he had been granted parole. The terms of his parole require him to comply with the release plan approved by the US Probation Office. He must comply with the Conditions of Supervision at all times. Should Petitioner-Plaintiff violate the terms of the Conditions of Supervision, Respondent-Defendant Ruiz, in her official role as the Chief Probation Officer for the district in which Petitioner-Plaintiff resides and to whose office he reports, will report the violations to the AFCPB, which, in turn, reports to the Secretary of the Air Force Personnel Council, which, in turn, reports to the Secretary of the Air Force, pursuant to Chapter 10 of Air Force Instruction 31-205 and Chapter 20 of Enclosure 2 of Department of Defense Instruction 1325.7.

*Id.*

In another District of Columbia case, Petitioner Brown, while on parole, sought relief challenging his Air Force court-martial convictions. *Brown v. Kendall*, No. 22-CV-147 (JMC), 2022 WL 2045321, at *1 (D.D.C. Feb. 3, 2022). The named respondents were the Secretary of the Air Force, and the President of the AFCPB. *Id.* The *Brown* Court held that the Secretary of the Air Force was not Brown's immediate custodian and therefore was not the proper respondent. *Id.* (citing *Guerra v. Meese*, 786 F.2d 414, 417 (D.C. Cir. 1986)). The *Brown* Court noted that "jurisdiction is proper only in the district in which the immediate, not the ultimate, custodian is located." *Id.* (citing *Monk v. Sec'y of the Navy*, 793 F.2d 364, 379 (D.C. Cir. 1986); *Day v. Trump*, 860 F.3d 686, 691 (D.C. Cir. 2017)).

The *Brown* Court consequently transferred the case to the District of Maryland. *Id. See Brown v. Kendall*, No. CV DLB-22-410, 2023 WL 2648781, at *3 (D. Md. Mar. 27, 2023). Brown's new venue, the District Court of Maryland, held that because "the [AFCPB] was Brown's immediate custodian when the petition was filed, [the President of the AFCPB] is the proper respondent." *Id.* at *4.

A similar situation occurred in the Northern District of Texas. Rice, the petitioner, filed a *pro se* complaint against the AFCPB, and Thomas Shubert, his case manager. *Rice v. Shubert, et al.*, No. 3:18-cv-3292-S-BK, at *1 (N.D. TX Mar. 6, 2019). Rice asserted that Shubert and the AFCPB imposed an arbitrary restitution penalty on him due to a vague condition in his parole agreement and that the respondents threatened to re-incarcerate him if he did not comply. *Id.* The *Rice* Court held that although the petitioner resided in Dallas, Texas, and

his own actions took place within the Northern District of Texas, the events that gave rise to the claims occurred in the District Court for the District of Maryland. *Id.* at *1-2. In the interest of justice, the *Rice* Court *sua sponte* ordered that the case be transferred to the District of Maryland. *Id.* at *2-3.

"[P]arole is granted in the discretion of the [AFCPB] for Air Force service members." *Huschak*, 642 F. Supp. 2d at 1273. In non-military contexts, courts in the Eleventh Circuit have found a parole board to be a proper respondent in habeas petitions. *See Thomas v. Crosby*, 371 F.3d 782, 787-88 (11th Cir. 2004); *Smith v. Jones*, No. 3:14CV195/MCR/EMT, 2015 WL 521067, at *13 (N.D. Fla. Feb. 9, 2015); *Bozeman v. Lambert*, 587 F. Supp. 1021, 1023 (M.D. Ala. 1984), *aff'd* 762 F.2d 1022 (11th Cir. 1985), and *aff'd sub nom. Wilder v. Lambert*, 762 F.2d 1022 (11th Cir. 1985).

When Hyppolite filed his petition, he was on parole. Even though he was required to report to Respondent-Ruiz, he admits that if he violated the terms of his parole, then Ruiz would report the violations to the AFCPB. [ECF No. 26, p. 4]. This is similar to the Western District of New York's ruling in *Sangiacomo*, the Northern District of Illinois' ruling in *Knighten*, and the District of Columbia's ruling in *Brown*. Therefore, the Undersigned finds that the AFCPB is the *only* proper respondent to Hyppolite's habeas petition because it, unlike the other named respondents in this case, had legal custody over him when he filed his petition. Accordingly, because the AFCPB is located in the District of Maryland, that court **alone** has jurisdiction over this action.

As noted, because Hyppolite was "on parole" at the time he filed his claim, the AFCPB is the **proper respondent** to the habeas petition.

But, from a practical perspective, the next issue is: how, exactly, should the Court arrange for the AFCPB to become involved in the case?

One option would be dismissing the habeas Petition in its entirety. But this would generate problems for Hyppolite. Hyppolite's sentence has already expired. Because jurisdiction and custody are established when a habeas petition is filed, he was still "in custody" when he filed his Petition, by virtue of being on parole. But if this Court were to deny the Petition in its entirety, then he would not be "in custody" for any subsequent habeas filings, especially considering the Eleventh Circuit's recent ruling in *Clements*, 59 F.4th at 1217 (those who are subject to only Florida's sex-offender requirements are *not* in custody for purposes of habeas jurisdiction). Therefore, if we simply *dismiss* the Petition, then Hyppolite would no longer be able to file a new petition naming the AFCPB as a respondent.

The second option would be to allow Petitioner to add the AFCPB as a respondent. Once the proper respondent is added, the Court could then transfer the case to the District of Maryland, pursuant to 28 U.S.C. § 1631. The cases from New York, Illinois, Washington, D.C. and Texas that the Undersigned cited above all transferred their cases. In those cases, however, the parole board was *already* listed as a respondent. Here, the AFCPB was not listed as a respondent.

If this Court were to allow Hyppolite to add the AFCPB as a named respondent, then it could subsequently transfer the petition to the District of Maryland, where a District Judge in Maryland could ultimately decide the merits of Hyppolite's petition.

The Undersigned also recommends that Hyppolite's writ of mandamus be **dismissed**. Mandamus relief is available "if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983). Hyppolite asks for mandamus relief from Respondent Kendall, the Secretary of the Air Force, and Respondent Austin, the Secretary of Defense[8] "**if** Petitioner-Plaintiff's convictions and sentence are reversed either due to a writ of habeas corpus or due to a judgment declaring they are null and void." [ECF No. 26, p. 40-41 (emphasis added)]. Because the Court does not have jurisdiction over the underlying habeas petition, the Undersigned will not address the merits of Hyppolite's petition for a writ of mandamus. I, therefore, **respectfully recommend** that the Court **dismiss** that claim **without prejudice.**

Hyppolite additionally seeks declaratory judgment. Respondents argue that this claim should be dismissed because habeas remedies override the declaratory judgment statute. [ECF No. 34, p. 33 (citing *Monk*, 793 F.2d at 364)]. Declaratory judgment is not a proper type of relief when the underlying claim is a petition for a writ of habeas corpus. *See*

---

[8]     The Court likely does not have jurisdiction over either respondent for purposes of mandamus because both respondents are located in the Eastern District of Virginia.

*Monk*, 793 F.2d at 366. The Undersigned therefore **respectfully recommends** that this Court **dismiss (without prejudice)** Hyppolite's declaratory judgment claim.

<u>Certificate of Appealability</u>

Finally, Rule 11(a) of the Rules Governing § 2255 Proceedings requires this Court to decide whether a certificate of appealability should be issued or denied. *See Condon v. Sutten*, No. 3:19CV3613/RV/CAS, 2019 WL 6898933, at *1-2 (N.D. Fla. Dec. 4, 2019), *report and recommendation adopted*, No. 3:19CV3613/RV/CAS, 2019 WL 6894473 (N.D. Fla. Dec. 18, 2019). "[T]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,' and if a certificate is issued 'the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id*. Without a certificate of appealability, Hyppolite is barred from appealing the Court's ruling. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).

Section 2253(c) permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." *Id.* at 336. This requires the petitioner to, in turn, show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. (internal quotations omitted).

> We do not require petitioner to prove, before the issuance of a [certificate of appealability], that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has

received full consideration, that petitioner will not prevail. As we stated in
*Slack*, "[w]here a district court has rejected the constitutional claims on the
merits, the showing required to satisfy § 2253(c) is straightforward: The
petitioner must demonstrate that reasonable jurists would find the district
court's assessment of the constitutional claims debatable or wrong." 529 U.S.,
at 484, 120 S. Ct. 1595.

*Id.* at 338.

Here, based on a review of the caselaw, and the parties' arguments, it does not appear
that reasonable jurists would "find the district court's assessment of" Hyppolite's
constitutional claim's "debatable or wrong." *Id*. Additionally, if the Court agrees with the
Undersigned's recommendation and allows Hyppolite to file an amended petition, then any
argument that his constitutional rights were denied fails because Petitioner could still have
a chance to succeed (in the proper forum). Therefore, the Undersigned **respectfully
recommends** that the Court *not* issue a certificate of appealability.

### III.    Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the
Court **deny without prejudice** Hyppolite's habeas corpus claims, **permit** Hyppolite to
amend his Petition to add the AFCPB as a respondent and then **transfer** the case to the
District of Maryland. In addition, I also **respectfully recommend** that the Court **dismiss**
(without prejudice) the claims for declaratory judgment and mandamus and **not** issue a
certificate of appealability.

## IV.    Objections

The parties will have 14 days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties form a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMENDED** in Chambers, in Miami, Florida, on December 4, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies Furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record